M. Millard

*v.*

The Board of Education.

*Filed at Mt. Vernon January 25, 1887.*

1. Schools—*renting building for school purposes, as, a church building.* Where it becomes necessary for a board of education to procure a building in which to conduct a public school, they are authorized by law to lease a suitable building for that purpose, and it matters not that such building had been used for a church by some religious body.

2. Same—*procuring a building without a vote of the people.* Where a proposition to raise money to build a school house at a site selected, is defeated by a vote of the people, the board of education or directors, being required to provide a school for at least six months in each year, may lawfully rent any suitable building or room in which such school may be kept, without any vote for that purpose.

3. Same—*non-sectarian—religious qualifications of teachers.* The free schools of this State are not established to aid any sectarian denomination, or assist in disseminating any sectarian doctrine, and no board of education or school directors have any authority to use the public funds for such a purpose.

4. The statute has not prescribed any religious belief as a qualification of a teacher in the public schools, and therefore the school authorities may select a teacher who belongs to any church or to no church, as they may think best.

5. Same—*religious exercises in schools—sufficiency of bill to restrain.* A bill to enjoin a board of education from the use of school funds for sectarian purposes, alleged that the children of Catholic parents, and the teachers, who were Catholics, were required to attend at a Catholic church, the basement of which was used for the school, at eight o'clock in the morning on school days, and hear mass read by the priest, and then repair to the school room and engage in the study of the church catechism for half an hour before the opening of the school, and at the close of the school at noon the "Angelus" prayer was read by the teachers and pupils, but failed to show that the board were in any manner connected with such exercises and requirements: *Held,* that the bill did not show any ground of equitable relief, it not appearing that complainant had any children who were required, against his wishes, to attend or receive any religious instruction.

Writ of Error to the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit Court of St. Clair county; the Hon. Amos Watts, Judge, presiding.

Mr. M. MILLARD, for the plaintiff in error :

A resident tax-payer may bring a bill to prevent an illegal expenditure of public funds. *Chase* v. *Stephenson*, 71 Ill. 383; *Springfield* v. *Edwards*, 84 id. 626; *Chestnutwood* v. *Hood*, 67 id. 132; *Wright* v. *Bishop*, 88 id. 302.

The powers of school officers are wholly derived from the statute. They can not locate a school house site, etc., without a vote of the people. And it has been held that when a school house was built on a site not fixed by the people, or when the debt incurred in purchasing the ground, or building a school house, was not authorized by such vote, the whole proceeding was invalid, and that no recovery could be had or tax levied to pay the same. *School Directors* v. *Miller*, 54 Ill. 338; *School Directors* v. *Fogleman*, 76 id. 189; *Thatcher* v. *People*, 93 id. 240.

The last question is, whether a common school can be subordinated to the interest of a religious congregation in such a way as to assist in the support of its church or the teaching of its faith,—whether this is not a violation of the principle of religious equality, and an enforced support of a sectarian denomination. The constitutional guaranties against public aid to religious sects are as follows :

Section 3, of the Bill of Rights, provides that "the free exercise and enjoyment of religious profession and worship, without discrimination, shall forever be guaranteed ;" and further, that "no person shall be required to attend or support any ministry or place of worship against his consent; nor shall any preference be given by law to any religious denomination or mode of worship."

The first section of article 8 of the constitution, requires that "the General Assembly shall provide a thorough and efficient system of free schools, whereby all the children of this State may receive a good common school education"— not a religious or sectarian training. This section confines the system to the common branches, and necessarily excludes

all sectarian interference, and any special benefit to a particular denomination is prohibited.

There are three reasons, then, for enjoining the board of education from maintaining the school in question: First, because it has no power to rent buildings for permanent schools; second, because it has no authority to locate a school without a vote or petition of the people; and third, because it can not subordinate a public school to the interest of any church.

Mr. CHARLES W. THOMAS, for the defendant in error:

The fact that the building employed for the school may have been used by a Catholic church, is wholly immaterial. There being no legal religious test for teachers, the directors are not required to employ a church member as a teacher, nor required not to employ one because of a particular religious faith.

The attending to religious exercises before opening the public school is a mere voluntary matter, and has no relation with the school. No child of any one is required to attend mass, nor is it required by the board of education that any child shall study a catechism. This appears to have been a matter not directed or required by the board.

The Angelus prayer, used in Roman Catholic churches, is said by the teachers and children when school is dismissed at noon. This is not required by any regulation of the board or any rules of the school. The bill itself proceeds upon the theory that it is wholly voluntary. No one could learn from the bill that the board knew anything about the mass or the catechism or the prayer, or had anything to do with any of the offensive religious acts charged, except the employment of Catholic teachers, which is not forbidden by law.

The law requires school to be kept so many months in each year, and this can not be done without procuring a school building; and if the district has none, and fails to vote for a

site, it follows that the board of education must lease a school building in order to discharge their duty to the public.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The court sustained a demurrer to the bill, and complainant electing to stand by the bill, a judgment was entered dismissing the cause at complainant's costs. The only question, therefore, to be considered is, whether the allegations of the bill show grounds for equitable relief.

It is alleged that complainant is a tax-payer in a certain school district in St. Clair county; that the schools are under the control of a board of education instead of school directors; that for the last ten years the school authorities of said district have maintained one of the schools in the basement of a church which is under the control of a congregation of Roman Catholics; that such congregation is sectarian; that during the last year, the board of education appointed, as teachers for such school, persons who alone were members of such church; that the board paid the church, as rent for the use of the basement, for the school year of ten months, $600; that the children of Catholic parents, and the teachers, were required to assemble at the church, on all school days, by eight o'clock A. M., and have mass said to them by the priest of the congregation, until half-past eight o'clock; that the teachers and pupils were then required to repair to the school room, in the basement, and engage in religious instruction, by teaching and learning catechism, until nine A. M.; that the common school exercises were then commenced, and continued until twelve o'clock, when the Angelus prayer was said by pupils and teachers. It is also alleged that the basement of said church was never established or located as a school site by a vote of the people of the district, or petition of the voters, as required by statute; that the board of education threatens to and will appoint only members of said church as teachers for the ensuing year, and will pay for the

use of the basement the same rent as heretofore, and will conduct the school therein at public expense, with the religious exercises above set forth, in the same manner as during the last year.   It is also alleged, that on the 1st day of February, 1885, a school site, other than that named in the bill, was located, in pursuance of a petition of a majority of the voters of the district, and on the 10th of March, 1885, the board submitted a proposal to issue $30,000 of the bonds of the district, to the voters, with which to pay for the site, which was voted down by a majority of eighteen.   The bill concludes with a prayer, as follows:   "Wherefore complainant prays that said board of education may be summoned to answer this bill; that upon a hearing hereof, said board may be perpetually enjoined from in any manner maintaining, supporting or conducting a public school in such church basement, or expending any of the school funds of said district for that purpose, and that in the meantime a temporary injunction issue to restrain the defendant from so doing; and that complainant may have such other relief as to equity appertains."

As to the first allegation, — that the schools have been maintained in the basement of a Catholic church,—no importance whatever can be attached to a fact of that character. If the district where the school was maintained had no school house, and it became necessary for the board of education to procure a building to be used for school purposes, they had the right to rent of any person who had property suitable for school purposes, and whether the owner of the property was a Methodist, a Presbyterian, a Roman Catholic, or any other denomination, was a matter of no moment; nor was it material that the building selected had been used as a church.

The next allegation is, that the board employed Catholic teachers in the school.   The statute has not prescribed any religious belief as a qualification of a teacher in a public school.   The school authorities may select a teacher who belongs to any church or no church, as they may think best.

The next allegation is, that children of Catholic parents, and the teachers, are required to attend at the church, at a certain hour on school days, and hear mass said by the priest. Who requires this attendance is not disclosed by the bill. Whether it is the priest or church authorities, or somebody else, is left to mere conjecture. There is no intimation that the board of education requires anything of this character, and so long as they are not connected with the matter, the allegation forms no ground of relief in favor of complainant. Besides, attending mass at the church has nothing to do with the school or its management, and upon what ground complainant can complain, because others, in no manner connected with him, may be required to attend mass at the church, we can not comprehend.

Another part of this allegation is, that the teachers and pupils are required to meet at the school room each morning, for a half-hour before nine o'clock, and engage in religious instruction, by teaching and learning catechism. What the nature of this religious instruction may be, is not disclosed by the bill, nor is it claimed that it is directed, ordered or required by the board of education, or that they have anything to do with it. Nor is it claimed that complainant's children are required, against his will or desire, to attend any religious or sectarian instruction in the school. Under such circumstances, we see no ground for relief, under this part of the bill.

The next allegation found in the bill is, that when school closes at noon, each day, the "Angelus" prayer was said by pupils and teachers. It is nowhere claimed in the bill that this prayer is required by any regulation of the board or any rule of the school. So far as appears, it is a mere voluntary matter among teachers and scholars, which in no manner injures complainant. Had the board of education required any particular religious doctrine to be taught in the public schools, or established any religious exercises, sectarian in character, and complainant's children were required to receive such re-

ligious instruction in the school and conform to the sectarian exercises established, he might have good ground of complaint, as our public schools are established for the purpose of education. The free schools are institutions provided where all children of the State may receive a good common school education. The schools have not been established to aid any sectarian denomination, or assist in disseminating any sectarian doctrine, and no board of education or school directors have any authority to use the public funds for such a purpose.

The next and only remaining allegation of the bill, to be considered, questions the authority of the board to lease the basement of the church for school purposes. It appears from the bill, that on the 1st day of February, 1885, the voters of the district located a school-house site, in pursuance of the statute, and that the board of education submitted the question of issuing bonds, in amount $30,000, to erect a school house on the site selected, to a vote of the people, and that on the 10th day of March, 1885, the proposition was defeated by a vote of the people. Section 80, chapter 122, of the Revised Statutes, made it the duty of the board of education to establish and support free schools, not less than six nor more than ten months in each year. What course should the board pursue? Money to build could not be raised, because the voters had defeated the proposition. The school was required to be kept in operation. Under such circumstances no remedy was at hand except to lease, which may be done under the section of the statute last named. What building the board should lease for school purposes is a matter for that body to determine, and not for the courts to decide. After the building is procured, of course the school will have to be conducted in the same manner that other free schools of the State are conducted, regardless of any opinion that may be entertained by the owner of the building in regard to the propriety of any school exercises.

As no ground for equitable relief is shown in the bill, the judgment of the Appellate Court was right, and it will be affirmed.

*Judgment affirmed.*

Mr. Justice Magruder: I do not concur in this decision.