EDWARD C. REICHWALD, Appellant, *vs.* THE CATHOLIC BISHOP OF CHICAGO *et al.* Appellees.

*Opinion filed February 20, 1913—Rehearing denied April 4, 1913.*

1. CONSTITUTIONAL LAW—*constitution does not prohibit church from giving a building to a county.* The constitution prohibits a county from giving land to a church, but there is no prohibition against a church giving a building to the county.

2. SAME—*constitution does not mean that religion is abolished.* Under the constitution no person can be compelled to attend or support any ministry or place of religion against his will and no preference can be given by law to any religious denomination or mode of worship, but this does not mean that religion is abolished nor give the right to anyone to insist there shall be no religion.

3. SAME—*county board may permit religious denomination to erect a chapel on county poor farm.* The county board may authorize a religious denomination to hold religious exercises on the county poor farm, and may permit it to erect a chapel on the farm for that purpose without expense to the county.

APPEAL from the Circuit Court of Cook county; the Hon. ADELOR J. PETIT, Judge, presiding.

RICHARD J. COONEY, and DAVID REVELL, for appellant.

FRANCIS S. WILSON, and WINSTON, PAYNE, STRAWN & SHAW, (JOHN BARTON PAYNE, and WALTER H. JACOBS, of counsel,) for appellees.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The appellant, as a tax-payer, in behalf of all other tax-payers who might wish to join as well as himself, filed a bill in the circuit court of Cook county against the Catholic Bishop of Chicago, James E. Quigley, archbishop, and A. J. Thiele, vicar-general of the Roman Catholic diocese of Chicago, the board of commissioners of Cook county, and Paul Gerhardt, county architect, asking for an injunction. A demurrer was sustained to the bill, it was dismissed for want of equity, and complainant has appealed.

The act sought to be enjoined was the erection of a building for religious worship upon grounds owned by the county of Cook used as a poor farm, and the facts shown by the bill follow. Upon these grounds, consisting of 150 acres, are certain large buildings, in which the county has housed and is maintaining the poor who are a charge upon the county. On February 20, 1911, the board of commissioners adopted the report of a sub-committee on Oak Forest Institutions, by which name the poor farm, with the buildings on it, is known, as follows:

"Your sub-committee on Oak Forest Institutions beg leave to report that they have had under consideration the communication of A. J. Thiele, V.-G., for the Catholic Bishop of Chicago, asking permission to erect on the grounds of the Oak Forest Institutions a chapel to be used for religious worship and funeral services. Your committee recommends that such permission be granted. We further recommend that similar permission be granted to all recognized religious sects: *Provided, however,* that all chapels shall be built under the direction and supervision of the county architect; all plans and specifications to be prepared by him and subject to the approval of the county board; buildings to be of the same kind and character as the buildings now located on the grounds; the location to

be designated by the county board and title to vest in the county of Cook."

In pursuance of this action the Catholic Bishop of Chicago and the board of commissioners, under the direction of the county architect, have appropriated a part of the ground to the purpose mentioned in the report and the former is erecting a permanent building on such grounds, being 138 feet long and 66 feet wide, which, when completed, is to be used as a chapel for religious worship, in which the services of the Roman Catholic church will be celebrated and performed according to the rules and customs of that church.

These are the facts alleged. In addition, certain conclusions as to the legal effect of the action of the county board are averred. It is alleged that the county board by its action has given to the Catholic Bishop of Chicago the permanent use of the said land, grounds and building as a place of religious worship; that the said grounds are open to appropriation and occupation by any recognized religious sect for the purpose of erecting permanent buildings thereon for religious worship, and that there is granted to the religious sects of this State the right to enter upon the said grounds and erect thereon permanent buildings for the permanent use of religious worship. These are the pleader's conclusions as to the effect of the adoption of the report, which the demurrer does not admit.

It is claimed that the permission given to erect a chapel for religious worship and funeral services violates section 3 of article 8 of the constitution, which provides that "neither the General Assembly nor any county, city, town, township, school district, or other public corporation, shall ever make any appropriation or pay from any public fund whatever, anything in aid of any church or sectarian purpose, or to help support or sustain any school, academy, seminary, college, university, or other literary or scientific institution, controlled by any church or sectarian denomination what-

ever; nor shall any grant or donation of land, money, or other personal property ever be made by the State or any such public corporation, to any church, or for any sectarian purpose."

The bill is framed on the theory that the adoption of the report, together with the selection of the particular location and the erection of the building, constitutes a grant or donation of land to a church or for a sectarian purpose. The county parts with nothing; it acquires a building. The church acquires nothing; it has a license to erect a building. The constitution prohibits the county from giving the land to the church, but there is no prohibition against the church giving the building to the county, and this is what the adoption of the resolution by the county board provides for. There is no question of any grant or donation by the county. May the county permit the use of the building for religious worship and funeral services? The constitution does not prohibit poor persons who are unable to earn a livelihood and whose care and maintenance the county has assumed, from meeting together in some building or room on the poor farm for the worship of God. In return for the care given the body the State does not exact the surrender of all care for the soul. The constitution is not violated if the county, at no expense to itself, permits a priest or minister or layman to say a prayer at a funeral, or if a friendless pauper is allowed a burial with the religious ceremony usually observed by civilized nations in the burying of the dead. The constitution does not absolutely prohibit the exercise of religion, but, on the contrary, provides that the free exercise and enjoyment of religious profession and worship, without discrimination, shall be forever guaranteed. No person can be required to attend or support any ministry or place of worship against his consent, and no preference can be given by law to any religious denomination or mode of worship. This does not mean that religion is abolished. The State undertakes to

provide for all the wants of the unfortunate wards whom it has collected at the poor farm. Food, clothing, lodging, medical care and attention, occupation and employment, must all be provided for, and the extent and manner of their provision are committed to the county board, with whose discretion the court will not interfere unless it is exercised in a manner clearly illegal. If the county board deems it advisable to establish a reading room or library for the county's poor there is no constitutional limitation to prohibit it. So a lecture room might be established. If charitably disposed persons wish to hold religious services in the lecture room or reading room occasionally or regularly, without expense to the county, no constitutional right is interfered with. Religious privileges are brought to the inmates, which may be availed of by each according to his own wishes. No one can be obliged to attend or to contribute, but no one has a right to insist that the services shall not be held. The man of no religion has a right to act in accordance with his lack of religion but no right to insist that others shall have no religion. In *Nichols* v. *School Directors,* 93 Ill. 61, a law was held to be within the constitutional power of the legislature which gave to school directors the right to grant the temporary use of school houses, when not occupied by schools, for religious meetings and Sunday schools, for evening schools and for literary societies, and for such other meetings as the directors may deem proper, and the action of school directors was sustained giving permission to different church organizations to hold religious services in the school house. That decision, in principle, justifies the action of the board of commissioners, which, in effect, grants permission, revocable at any time, for having religious worship and funeral services in the building in question.        *Decree affirmed.*