---

(No. 11427.—Reversed and remanded.)
WILLIAM H. DUNN, Appellee, *vs.* THE CHICAGO INDUSTRIAL SCHOOL FOR GIRLS *et al.* Appellants.

*Opinion filed October 23, 1917—Rehearing denied Dec. 6, 1917.*

1. CONSTITUTIONAL LAW—*constitution does not exclude wards of the State from religious exercises.* It is contrary to the letter and spirit of the constitution to exclude from religious exercises children of members of any denomination when the State assumes their control or to prevent such children from receiving the religious instruction which they would have received at home.

2. SAME—*when paying money to denominational school for the care of wards of the State does not violate constitution.* Paying $15 a month to the Chicago Industrial School for Girls, a Catholic institution, for every girl committed thereto by the juvenile court of Cook county under section 17 of the Juvenile Court act, does not violate section 3 of article 8 of the constitution, prohibiting the donation of public funds to any denominational institution, where such sum is less than the actual cost for the care of such girls at the State institution. (*County of Cook* v. *Chicago Industrial School for Girls,* 125 Ill. 540, distinguished.)

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

MACLAY HOYNE, State's Attorney, EDWARD OSGOOD BROWN, and ROBERT E. HOGAN, (JOHN BARTON PAYNE, of counsel,) for appellants.

CHARLES S. McNETT, and LEMUEL M. ACKLEY, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

William H. Dunn, a tax-payer of Cook county, filed the bill in this case in the circuit court of that county praying for an injunction to prevent the county board from appropriating, the county clerk from ordering paid and the county treasurer from paying the sum of $4151.50 for the care and maintenance of the girls committed to the Chicago Industrial School for Girls by the juvenile court of Cook county, upon the ground that the making and payment of the appropriation would violate section 3 of article 8 of the constitution. Answers were filed by the school and the county authorities, and replications thereto having been filed, the chancellor heard the evidence and entered a decree granting a perpetual injunction as prayed for and awarding costs against the defendants. From that decree this appeal was prosecuted.

The facts as determined by the pleadings, a stipulation of the parties and the evidence heard by the chancellor are as follows: The Chicago Industrial School for Girls was organized as a corporation under the act of the General Assembly of May 28, 1879, entitled "An act to aid industrial schools for girls." (Laws of 1879, p. 309.) It is managed and controlled by a board of directors, and maintains near DesPlaines, in Cook county, buildings, with ample grounds and equipment, to meet the requirements of the act. The buildings contain recreation halls, shower baths, class rooms, a music room and rooms for instruction in hand sewing and domestic science. The inmates are taught the usual school studies, and cooking, music, sewing, embroidery, crocheting, laundry work, general housework, and domestic work generally. The number of girls in the

institution for the year 1915 between the ages of three and eighteen years was 534, and the average attendance of girls during that year was 356. A considerable number of the girls were committed to the school by the juvenile court of Cook county, and they each and all enjoyed the benefit of the care, instruction and attention afforded by the institution. There are eleven teachers or instructors who are sisters of mercy and who are paid $16 a month, which goes into the common treasury of the religious order, and there are six other women instructors who belong to no religious order. The children committed to the school by the juvenile court are all children of Catholic parents and members of that church. The institution is under the control and management of the Roman Catholic church, and there is a priest who is chaplain and conducts religious services. There is a mother superior in general charge, and there is a chapel on the grounds where religious services according to the doctrines of the Roman Catholic church are held which all inmates are required to attend. The school has been receiving $15 per month for each girl, which is less than the cost to the State for each girl committed to the State Training School for Girls at Geneva, a similar institution maintained by the State, where the cost is $28.88 for each girl per month. The amount paid by Cook county is less than the cost of food, clothing, training, medical care and tuition furnished to the wards of the county outside of any religious instruction or religious services, and the balance above the amount paid by the county is made up by donations, largely given by the archbishop. Each year the school has been given a certificate by the State Board of Charities, or its successor, the Board of Administration, that the school is competent and has adequate facilities to care for the children committed to its care by the juvenile court.

The substantial basis of the brief and argument for the appellee is that the payment of public funds to a school

under church or sectarian control violates the constitution even when it is made in payment for clothing, board, education in the arts and sciences and training in the domestic sciences, and in the argument at the bar counsel contended that under the constitution no ward of the State can be committed to any institution where there are religious services or where religious doctrines are taught but all institutions to which they may be committed must be absolutely divorced from religion or religious teaching. This is a clear misapprehension of the attitude of the people toward religion expressed in the constitution. In the preamble expression is given to the gratitude of the people of the State for the religious liberty which they had been permitted to enjoy, and section 3 of the bill of rights provides: "The free exercise and enjoyment of religious profession and worship, without discrimination, shall forever be guaranteed. * * * No person shall be required to attend or support any ministry or place of worship against his consent, nor shall any preference be given by law to any religious denomination or mode of worship." Section 3 of article 8 of the constitution, which particularly prohibits any preference to any religious denomination or mode of worship, is as follows: "Neither the General Assembly nor any county, city, town, township, school district, or other public corporation, shall ever make any appropriation or pay from any public fund whatever, anything in aid of any church or sectarian purpose, or to help support or sustain any school, academy, seminary, college, university, or other literary or scientific institution, controlled by any church or sectarian denomination whatever; nor shall any grant or donation of land, money, or other personal property ever be made by the State or any such public corporation, to any church, or for any sectarian purpose." The people not only did not declare hostility to religion but regarded its teachings and practices as a public benefit which might be equal to the payment of taxes, and by section 3 of article 9 of the

constitution provided that property used exclusively for religious purposes may be exempted from the burden of taxation, and the General Assembly, by virtue of that provision, has declared such exemption. In harmony with the provision for the free exercise and enjoyment of religious freedom and worship, the General Assembly in the Juvenile Court act provided by section 17, that "the court in committing children shall place them as far as practicable in the care and custody of some individual holding the same religious belief as the parents of said child, or with some association which is controlled by persons of like religious faith of the parents of the said child."

Not only have the people, by the constitution and by their representatives in the General Assembly, recognized and provided for the enjoyment of religious liberty, but the court has not adopted any rule antagonistic thereto. In *Nichols* v. *School Directors,* 93 Ill. 61, the court said: "Religion and religious worship are not so placed under the ban of the constitution that they may not be allowed to become the recipients of any incidental benefit whatsoever from the public bodies or authorities of the State." In *Millard* v. *Board of Education,* 121 Ill. 297, where the authority of a board of education to lease the basement of a Catholic church and pay rent therefor was questioned and an injunction sought, the court said that if it became necessary for a board of education to procure a building to be used for school purposes it had a right to rent from any person who had property suitable for school purposes, and whether the owner of the property was a Methodist, a Presbyterian, a Roman Catholic or of any other denomination was a matter of no moment,—which is applicable to this case, where the care and education of girls as wards of the State are required and payment must be made therefor. In *Reichwald* v. *Catholic Bishop of Chicago,* 258 Ill. 44, in denying the right to an injunction to prevent the erection of a Roman Catholic chapel on the grounds of the county

used as a poor farm, the court said that in return for the care given the body the State does not exact the surrender of all care for the soul; that the constitution does not prohibit the exercise of religion, but, on the contrary, provides that the free exercise and enjoyment of religious preference and worship, without discrimination, shall be forever guaranteed, and that the declaration of the constitution does not mean that religion is abolished. The whole religious world is divided into separate denominations distinguished from each other by peculiarities of faith and practice, and what the constitution prohibits is a preference given by law to any denomination or mode of worship or aid to any such denomination by an appropriation or payment from any public fund whatever. The constitution guarantees absolute religious liberty, and no discrimination, in law, can be made between different religious creeds and forms of worship. (*Hoeffer* v. *Clogan,* 171 Ill. 462.) It would be contrary to the letter and spirit of the constitution to exclude from religious exercises the members of any denomination when the State assumes their control or to prevent the children of members from receiving the religious instruction which they would have received at home. The constitutional prohibition against furnishing aid or preference to any church or sect is to be rigidly enforced, but it is contrary to fact and reason to say that paying less than the actual cost of clothing, medical care and attention, education and training in useful arts and domestic sciences, is aiding the institution where such things are furnished.

Much reliance is placed upon the decision in a suit brought by the Chicago Industrial School for Girls against the county of Cook, in which it was held that payment to the school under the facts of the case would be a violation of the constitution. (*County of Cook* v. *Chicago Industrial School for Girls,* 125 Ill. 540.) At that time the corporation had no industrial school and had neither leased nor contracted for a building nor owned or acquired property

of any kind. The girls committed to it were divided between the House of the Good Shepherd and St. Joseph's Orphan Asylum, and it was in no sense an industrial school for girls. The money received was divided between the sisters of St. Joseph and the sisters of the Good Shepherd. The court held that an industrial school had no power to relinquish the care and guardianship of girls committed to it or surrender them to another corporation; that it was not sufficient to have a charter and a formal organization, with no habitation and nothing more than a mere paper entity, but that the county was only required to make payment to the industrial school to which girls were committed and was not bound to pay an industrial school to which they were not committed. It did not then appear that such payment would not be an aid to the Catholic church or its sectarian purposes, and the payment for board was likened to the aid given to a merchant by a customer paying for his goods. If there were no difference, in fact, between the business of the boarding house or hotel keeper carried on for profit and this institution the decision in that case would apply, but upon the plainest grounds no aid is given to an industrial school where the payment is less than the actual cost, aside from and regardless of any religious instruction or religious exercise. It costs the State $28.88 per month for each girl in a similar institution maintained by the State, and it is the State, and not the industrial school, that is benefited by the payment of less than the cost of food, clothing, medical care and attention and education and training in the useful arts and domestic science. Such payment does not violate any provision of the constitution.

The decree is reversed and the cause is remanded to the circuit court, with directions to dismiss the bill at the complainant's cost.

*Reversed and remanded, with directions.*