(No. 29446.—

THE PEOPLE *ex rel.* Ira Latimer *et al.,* Appellants, *vs.* THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Appellee.

*Opinion filed May 21, 1946—Rehearing denied September 12, 1946.*

LANDON L. CHAPMAN, of Chicago, for appellants.

RICHARD S. FOLSOM, (FRANK S. RIGHEIMER, and FRANK R. SCHNEBERGER, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

The petitioners, in the superior court of Cook county, sued for a writ of *mandamus,* seeking to compel the Board of Education of the City of Chicago to immediately revoke, cancel and repeal the action of the said board under date of August 16, 1929, authorizing the superintendent of schools to excuse public-school children at the request of their parents for one hour each week before the end of the regular school period, for the purpose of attending religious educational classes at places outside of the school activities or property. The petitioners also seek to compel the said board to make and enforce rules prohibiting the excuse of pupils from the public schools to attend classes for instruction in religion, or in aid of any church or sectarian purpose.

The board of education, appellee here, filed a motion to strike and dismiss an amended petition for *mandamus,* which, after hearing, was granted and the cause dismissed. From that ruling and order of the superior court, the petitioners prosecute a direct appeal to this court because a construction of both our State and the Federal constitutions is involved.

The interest alleged by the petitioners in bringing this suit is that the petitioner Ira Latimer is a citizen and resident of the city of Chicago and is particularly interested in the enforcement of laws relating to civil rights and liberties. He states that he has frequently engaged in activities opposing union of church and state in the public schools. He is the father of two children residing with him, one of whom he plans to enroll in the public schools of Chicago within the next three years. Fred Ptashne, the other petitioner, is similarly situated and in addition asserts that he is a taxpayer.

The petition fully sets forth the organization and powers of the Board of Education of the City of Chicago and its control and management of the public elementary schools of that city, together with the large number of teachers employed and the approximate number of pupils. It further recites the enormous sums expended from taxes and the financial aid received by the board from the United States government.

The particular official action of the board of education, about which the relators complain, was a regulation adopted on August 16, 1929, reading as follows:

"Proceedings of Board of Education, City of Chicago, August 16, 1929.

"The Superintendent of schools recommends that upon the written request of parents, the Superintendent be authorized to excuse pupils in sixth and seventh grade classes one hour a week to attend classes for instruction in religion. Reasons: A group of citizens and patrons of the public schools in the Lake View Community have petitioned for the release of their children for religious instruction in nearby churches. This follows the precedent of releasing children to attend Confirmation Classes in accordance with the State Law.

"Financial: No cost."

It is alleged that pursuant to such regulation the appellee, through its superintendent, teachers and other assistants, has for sixteen years released pupils from school during regular school sessions for one hour on condition that they attend a class in religious instruction and thereafter return to the public-school room.

It appears from the petition that out of 249,614 public elementary school pupils, 22,500 are excused for one hour per week, usually the last hour of the school day on Wednesday. It is claimed that the superintendents and principals are required to issue directions concerning the dismissal of pupils for the purpose outlined and that the superintendent uses postage, stenographic service, stationery, telephones and office space for such service; that the principals of the schools engage in conferences with the teachers of religion and with the agents of the churches concerning the details of the plan; that such services constitute duties performed in the course of their employment for which they are paid from the public-school fund.

Attached to the petition are exhibits prepared by "The Church Federation of Greater Chicago," announcing their program for religious instruction, together with a formal blank entitled "Parents Request Card," which, when filled out and signed, expresses the desire of the parents that their child be permitted to be enrolled in the weekday church school and the particular church or denomination in which the child is to receive instruction.

It is the contention of the petitioners that the action of the appellee above outlined violates the American principle of separating church and state. Particularly they say it is a violation of the first amendment to the constitution of the United States which provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Also that it violates the fourteenth amendment of the same constitution pro-

viding that no State shall make or enforce any law which deprives any person of life, liberty or property without due process of law, nor which denies to any person within its jurisdiction the equal protection of the laws. It is further claimed that such action violates a similar section of the Illinois constitution, being section 2 of article II. Petitioners further charge a violation of sections 1 and 3 of article VIII of the constitution of Illinois which require the General Assembly to provide a thorough and efficient system of free schools and that no public corporation shall make any appropriation or pay from any public fund whatever anything in aid of any church or sectarian purpose. In further support of their contention petitioners rely on section 3 of article II, reading as follows: "The free exercise and enjoyment of religious profession and worship, without discrimination, shall forever be guaranteed; and no person shall be denied any civil or political right, privilege or capacity, on account of his religious opinions; * * * No person shall be required to attend or support any ministry or place of worship against his consent, nor shall any preference be given by law to any religious denomination or mode of worship."

The petition also quotes extensively from chapter 122 of the Illinois Revised Statutes entitled "Schools," providing for compulsory attendance and covering other subjects pertaining to the powers and limitations governing the management of public schools in Illinois.

It appears from the petition that a large number of the pupils are receiving religious instruction in Catholic religion at 137 parochial schools and a smaller number of pupils are receiving instruction in the Protestant religion at 57 different church buildings of that faith.

It is the position of appellee that the petition of the appellants does not show any violation of the Federal and State constitutions, or of the statutes of the State of Illinois, nor does it show any clear legal rights in the relators

or a clear legal duty of the appellee essential for the issuance of a writ of *mandamus*.

We concede that the board of education should not help sustain or support any school controlled by a church or sectarian denomination or aid any church or sectarian purpose. On the other hand, we do not deem it the duty of a school board to be hostile or antagonistic to religion or churches, nor should it interfere with the free exercise and enjoyment of religious freedom.

The preamble to the constitution, adopted in Illinois in 1870, recognizes the reliance of the people upon a deity, and while the decisions of the Federal and State courts approve the doctrine of the separation of church and state, it is nowhere stated that there is any conflict between religion and the State, nor any disfavor of any kind upon religion as such. (*Rector, etc. Holy Trinity Church* v. *United States*, 143 U. S. 457; *Pierce* v. *Society of the Sisters of the Holy Name*, 268 U. S. 510, 69 L. ed. 1070; *Nichols* v. *School Directors*, 93 Ill. 61; *Millard* v. *Board of Education*, 121 Ill. 297; *North* v. *Board of Trustees*, 137 Ill. 296; *Dunn* v. *Chicago Industrial School for Girls*, 280 Ill. 613; *Reichwald* v. *Catholic Bishop of Chicago*, 258 Ill. 44.) In the last case cited, it was held, "The constitution does not absolutely prohibit the exercise of religion, but, on the contrary, provides that the free exercise and enjoyment of religious profession and worship, without discrimination, shall be forever guaranteed. * * * No one can be obliged to attend or contribute, but no one has a right to insist that the services shall not be held. The man of no religion has a right to act in accordance with his lack of religion but no right to insist that others shall have no religion."

The one Illinois case which appellants cite with favor is *People ex rel. Ring* v. *Board of Education*, 245 Ill. 334. In that case the teachers employed by the schools during school hours and in the schoolroom read to the pupils

portions of the King James version of the Bible; sacred hymns were sung in concert by the pupils; the Lord's prayer was recited in unison. There, as here, the petitioners filed a petition for a writ of *mandamus* to require the defendant in error to discontinue the above described exercises in the public schools. A demurrer to the petition was sustained and the writ of error brought to reverse the judgment. It was there held that such exercises constituted acts of worship; that the pupils were all required to participate; that the versions used were of a distinctly denominational tinge and a different interpretation from that taught by other religious faiths. The King James version was, in fact, a sectarian text to which the parents of the Catholic and Jewish faiths and some protestant persuasions objected. Thus it was held a violation of the constitutional inhibition against the use of school funds in aid of a sectarian purpose and the case was reversed with instructions to overrule the demurrer.

The allegations in the present petition do not set up any direct, concrete facts which were the basis for .the holding in the *Ring case*. There is no charge that the action of the school board here is discriminatory or that any particular denomination or religious faith is favored, or that any part of the religious instruction is held in the schoolroom or on school property.

The Court of Appeals of the State of New York in the case of *People ex rel. Lewis* v. *Graves*, 245 N. Y. 195, 156 N. E. 663, had occasion to review a very similar *mandamus* case in which it held that the school authorities might release pupils during school hours for the purpose of attending religious education classes in their own churches without violating constitutional provisions much like those in our own State.

The appellant seeks to distinguish the New York case by saying that there was no use of public funds or property, while in the Chicago case there is. A portion of

the comment in the New York case on that issue is as follows: "The city of White Plains does not use public money to aid the church schools, although the co-operation between the public schools and the church schools requires a slight use of the time of the school teachers in registering and checking up excuses. The plan is governed by suitable regulations of the school authorities but does not rest on any legislative enactment. It must therefore be in harmony with the constitution and laws of the State. If it is, the courts have no further concern with it."

The petition for. *mandamus* in this case, in general terms and largely by way of conclusion, alleges that the superintendent of schools sends out letters and instructions to the principals and teachers concerning the release of pupils from the public schools for religious instruction and that he also uses postage, stenographic service, telephones and office space for such service. Also, that such service is rendered for the salary paid him by the schools from public-school funds. We do not find that the petition clearly, definitely or with any degree of certainty states any exact time spent by the principals or teachers, or even a remote idea of how much money, if any, is used out of the public-school fund for these directional purposes. We do not find any substantial difference between the constitutional provisions of the State of New York, or its statutory regulations concerning schools, and those in the State of Illinois.

It also appears to us that the New York case gave full consideration to all of the questions raised by the petitioners here and held adversely to their contentions. Because of the striking similarity in the facts and questions considered in that case, its findings must be held to be at least persuasive authority by this court.

The school authorities in Illinois and in every jurisdiction in the United States have always been vested with discretionary power to determine what constitutes a suffi-

cient excuse for absence from school, and the courts should not interfere or attempt to control the exercise of such power, unless it has been substantially abused. The regulation complained of does not do violence to the compulsory attendance law and in our judgment is a reasonable rule for the practical administration of the public schools.

In the examination of the constitutional provisions cited by the appellants, and admitting all the facts well pleaded in the *mandamus* petition to be true, we do not find any constitutional or statutory violation by the board of education in this case. As this court has repeatedly stated, in *mandamus* cases the burden is on the petitioners to show that they have a clear legal right to the writ. It was incumbent upon the petitioners to show that the appellee had no lawful authority for doing the things they seek to prevent it from doing. We hold that the petitioners have not shown any clear legal right essential to the issuance of a writ of *mandamus.*

The order of the superior court of Cook county, striking the amended petition for *mandamus* and dismissing the suit, is affirmed.

*Order affirmed.*