Skyview Development Company, a Corporation, Petitioner-Appellee, v. Raymond Ripplemeyer, Richard Ruff, and Glenn Esker, Board of County Commissioners of Monroe County, Illinois, Richard A. Trost, County Clerk, Monroe County, Illinois, and Joseph J. Volkert, Jr., City Clerk, and Wilbert H. Kremmel, Mayor, Columbia, Illinois, Defendants-Appellants.

Gen. No. 68–91.

Fifth District.

June 5, 1970.

460

Floyd E. Crowder, of Columbia, Sam S. Pessin, of Belleville, and C. Glennon Rau, State's Attorney of Monroe County, of Waterloo, for appellants.

Walker & Williams, of East St. Louis (David B. Stutsman, of counsel), for appellee.

EBERSPACHER, J.

This is an appeal perfected by the County Commissioners and County Clerk of Monroe County and the Mayor and City Clerk of the City of Columbia in Monroe County, from orders entered directing the issuance of writs of Mandamus against the appellants mandating them to issue their respective licenses to construct and operate a trailer court, pursuant to applications filed with them requesting permits for the construction of "a new mobile home court" by the Plaintiff-Appellee corporation, Skyview Development Company.

On September 3, 1964, the County Commissioners of Monroe County entered into a contract with a Planning and Research Consultant firm for a proposed zoning plan of the entire county including the six incorporated cities in Monroe County which included the City of Columbia. Since that time the City Planning Commission of the City of Columbia has worked in conjunction with the Monroe County Planning Commission for the planning of Monroe County. On April 1, 1965 Monroe County received federal funds for this proposed planning project. The membership of both the City and County Planning Commissions were intertwined. In conjunction with County, State and Federal authorities, public hearings and meetings were held after receipt of federal funds and although the final zoning ordinances were not passed at the time of trial, they had been virtually completed by that time.

Plaintiff, on September 28, 1965, entered into a 99-year lease with an option to purchase for a tract of approxi-

461

mately 157 acres lying in Monroe County, of which 33 acres lay within the City. The lease authorized the lessee to build any buildings or structures desired, make improvement of any kind including, but not limited to, the installation of streets, roads, sewers, gas, oil, water, electric and other utilities. Lessee also had the right to mortgage the land or any part thereof, and the right to mortgage any improvements, structures, and buildings existing or thereafter placed upon the land, and the lease was by its own terms subordinated to the lien of any such mortgage or mortgages. The lease was assignable and authorized subletting of the premises or any part thereof.

Plaintiff's agent testified that before entering into the lease it had caused an examination to be made to determine whether or not mobile home courts were prohibited in either the city or county, and their attorney reported there was no prohibition and that, in fact, both the city and county had trailer court ordinances providing for the issuance of permits with certain specified conditions; although zoning plans had been initiated by various official actions and public hearings held during the preceding year, that plaintiff knew of no plans for zoning or impending zoning plans, and finding no zoning ordinances entered into the lease for the sole purpose of constructing and operating a mobile home court thereon. Plaintiff testified that it was only in January of 1968, more than 3 years after a proposed zoning plan for both the county and city was initiated, that plaintiff learned through the attendance at a meeting of either the Planning Commission or Council by its representative, that the County and City had been working on a general county plan and zoning ordinances and that the Plaintiff's plan of development of the leased tract was in violation of the plans.

On March 5, 1968, Plaintiff filed with the County authorities its "Application for Permit to Construct a New

462

Mobile Home Court." In the application it was stated that the area of the proposed court was approximately 20 acres, that for initial construction 67 spaces were proposed, and that the entire mobile home court would not be constructed at one time and after completion, the court would be operated 12 months of the year. The application pointed out that Section A would be constructed first and referred the reader to a landscape design attached as Exhibit A. For the legal description the application referred to Exhibit B. The legal description did not describe the 20-acre tract, but the entire 157-acre tract. By reference to both, one is still unable to determine what part, if any, of the 20-acre tract referred to as Section A lies within the city, in fact, the landscape design indicates that the City of Columbia lies somewhere in the distance to the South of the entire 157 acres, and that the portion designated as Section A lies at the North end of the tract. No one of the calls, monuments, or points of reference contained in Exhibit B are shown in Exhibit A. The application further stated that the "mobile home spaces will be independent as defined in chapter 111½ Illinois Revised Statutes 1967" and that "since all mobile home courts will be independent units, no sanitary community building will be provided" explaining that under section 172.5 of chapter 111½ Ill Rev Stats 1967, a community service building is required only for dependent trailer coaches.

Later in the month a similar application was filed with the City Clerk. It differed from the county application in that it made no mention of fire fighting facilities, fire protection or refuse hauling. On April 3 it was returned with the application fee "for the reason that we are not in a position to accept the same."

At the time petitioner filed the application with the County there were in force numerous ordinances and resolutions relating to the licensing, regulation and control of trailer courts and trailer parks, as well as provi-

sions for land subdivision in the unincorporated areas of the County. The City of Columbia at the time of filing the application with it, had a Municipal Code providing for licensing of businesses, provisions relating to Trailer Coach Parks, a city plan and the Plan Commission and its powers and duties.

██ ██ The trial court entered judgment in favor of Plaintiff ordering writs to issue and specifically found "the petitioner has complied with the applicable ordinances and statute." We are of the opinion that such finding is not supported by the evidence. As a result the further finding "that the respective duties of the defendants to issue said licenses or permits are clear, unequivocal and nondiscretionary" is likewise not supported by the evidence, particularly when petitioner failed in its application to state whether it sought a license for a "trailer court" or "trailer park" so that the authorities could determine which of the various ordinances were applicable, let alone definitely locate the actual tract for which licenses were being applied. Under such circumstances, the fact that the issue of licenses constitutes mere ministerial rather than discretionary acts is of no consequence. As a result, People ex rel. Simpkins v. Village of Kincaid, 26 Ill App2d 68, 167 NE2d 698, is not applicable.

The record is confusing and contradictory as to whether the permits were requested for a "trailer court" or a "trailer park." The applications referred to a "mobile home court" and with reference to sanitary facilities referred to the provisions of chapter 111½, Ill Rev Stats 1967; and letters, one addressed to the County Clerk by petitioner's attorney, the other from the Department of Public Health, referred to a proposed "trailer park." Both were submitted for attachment to the application to the County, and were presented in evidence. The complaint prayed for authority to construct and operate a

"trailer court" and the order compelled the issuance of licenses to construct and operate a "trailer court." The applications recited that the spaces would be independent as defined in chapter 111½, Ill Rev Stats 1967, that the smallest space would be 5,000 square feet, that sewer and water services would be provided, gas and electric post lamps would be furnished and operated, telephone and electric wiring below the ground for each unit would be installed, that all State requirements would be met and State permit issued as per this letter from the Department of Public Health which referred to a trailer park and the "Illinois Trailer Coach Park Control Law." Obviously, this reference was to "An Act in relation to the licensing and regulation of trailer coach parks," approved July 13, 1953, c 111½, §§ 158–185, Ill Rev Stats 1967, Section 159 of that Act provides that any portable structure "resting in whole on a permanent foundation with wheels, tongue and hitch permanently removed shall not be construed as a "trailer court" or "mobile home." It is to be noted that chapter 111½, Ill Rev Stats 1967 does not provide for legislative control over a "trailer court," only a "trailer park," although the provisions of that legislation are referred to in the application and Exhibit A indicates a "trailer park" within the definition of the County Ordinance, petitioner contended below that it was entitled to a license for a "trailer court."

County Ordinance 68–1 defined a trailer park or park as "an area of land upon which two or more trailers are harbored either free of charge or for revenue purposes and shall include any building, structure, tent, vehicle or enclosure used or intended for use as a part of the equipment on said park." From the petition with Exhibit A it could reasonably be considered that structures were anticipated.

Ordinance 68–1 likewise defined a trailer court as "an area of land divided into two or more lots plotted and

laid out to provide sites for trailers permanently affixed to the land." It makes no mention of any structures such as shown on Exhibit A, but by paragraph 16 provided:

> "Before any area within the county, or its jurisdiction limits, is established as a trailer court, the same shall be surveyed and platted and the plat thereof submitted to the Board, together with the application for permission to establish such a trailer court, for approval by the Board. Said plat should clearly show and describe all recreational facilities provided for said court, if any, the type of road construction to be used, all utility services and the proposed draining plan. . . ."

Petitioner's Exhibit A clearly does not show and describe the type of road construction to be used, all utility services and the proposed drainage plan.

■ ■ Whether the County authorities determined that the application was for a license for a "trailer court" or a "trailer park," we find the application to be inadequate and the tendered "Landscape Design" attached as Exhibit A to be so inadequate that the application was not sufficient under the applicable Ordinances, and failure to act upon it was justified, and could not be the basis for the issuance of the writ. People ex rel. State Bank & Trust Co. v. Moore, 322 Ill App 500, 76 NE2d 201. We consider it was incumbent upon petitioner to make it clear to the authorities under which sections of the Ordinance it requested a license, and failing in that regard, as well as failing to make clear in the application the location and an adequate legal description, the County authorities were relieved of any obligation in the matter.

■ Petitioner contends that since the County Clerk did not advise the reason for declining the license in writing and giving petitioner a chance to correct the applica-

tion and resubmit it, that it must be assumed that the application contained no defects and the County has waived any objections to its insufficiency. In support of that position, petitioner points to section 7 of Ordinance 68–1 which deals with licensing of *trailer parks* and which, in part, provides:

> "If the application for a permit to construct or license is declined, the County Clerk shall give the reasons therefor in writing to the applicant; and if the objections can be corrected the applicant may amend his application and resubmit same."

No similar provision is cited with reference to a "Mobile Home Court" application nor for an application for a "trailer court." Petitioner contended below that it was denied a license for a "trailer court" and on that basis, sought the writ. As a result, we will not hear it to say that the County waived any objections to its "trailer park" application, or was under duty to advise it of the numerous deficiencies of its application. Its application showed a disregard of the provisions made for licensing either a "trailer park" or a "trailer court" and appears to be designed to procure some kind of license before the Planning Commission's recommendations could be implemented.

■ Much that we have said is applicable to the position of the City, which was presented a similar application. The applicable City Ordinance required a sketch "showing the size and location of the *trailer park* including all buildings, *structures,* and enclosures." (Italics ours.) Petitioners contend their application met all the city requirements, including this one, again losing sight of the fact that below they contended they were denied an application for a trailer court, and the City officials could not, in view of the confusing application, determine what, if any, ordinances were required to be complied

with. From the language of the application and Exhibit A they would have been justified in contemplating "structures," but the application did not meet the requirement of the City Ordinance. Even though Exhibit A might reasonably be termed a "sketch," it did not adequately show size and location, nor did it furnish adequate information concerning structures, such as the location or description or size of the roadways, the lake, or lights, or sanitary facilities. A City Ordinance required separate sanitary facilities for men and women in "trailer parks."

■■ In a mandamus proceeding the petitioner has the burden of showing a clear and undoubted right to the writ, People ex rel. Latimer v. Board of Education, 394 Ill 228, 68 NE2d 305, and must establish every material fact essential to show the plain duty of the respondents; People ex rel. Pignatelli v. Ward, 404 Ill 240, 88 NE2d 461; Daniels v. Conner, 404 Ill 327, 88 NE2d 372. Here petitioner clearly failed to show compliance with ordinances (see People ex rel. Slutzkin v. Village of Lincolnwood, 346 Ill App 469, 105 NE2d 331; People ex rel. Delgado v. Morris, 334 Ill App 557, 79 NE2d 839; People ex rel. State Bank & Trust Co. v. Moore, 332 Ill App 500, 76 NE2d 201); and the writs were improvidently issued.

As a result, we do not reach the further question posed by the briefs of all parties, i. e., whether issuance of licenses may be delayed when there is under consideration or pending proposed ordinances or planning commission recommendations for ordinance amendments. See Chicago Title & Trust Co. v. Village of Palatine, 22 Ill App2d 264, 160 NE2d 697, and First Nat. Bank of Skokie v. Village of Skokie, 85 Ill App2d 326, 229 NE2d 378. Neither do we pass upon the question of whether petitioner had changed its position substantially in reliance on the probability of the issuance of licenses pursuant

to existing ordinances, nor if so, whether such change was justified in view of the public meetings concerning the development of planning for the County and City both before and after petitioners' acquisition of the 157-acre tract.

For the reasons herein stated, we reverse the judgment ordering the writs to issue.

Judgment reversed.

GOLDENHERSH and MORAN, JJ., concur.