(No. 29678.—

THE PEOPLE *ex rel.* Vashti McCollum, Appellant, *vs.* THE BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 71, Appellee.

*Opinion filed January 22, 1947.*

Milton T. Raynor, (Walter F. Dodd, of counsel,) both of Chicago, for appellant.

John L. Franklin, of Champaign, and Eckert & Peterson, (Abe R. Peterson, Owen Rall, and Burnham M. Fisk, of counsel,) all of Chicago, for appellee.

Mr. Justice Thompson delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Champaign county denying a writ of *mandamus* as petitioned for by Vashti McCollum, the relator and plaintiff, a resident and taxpayer in Champaign School District No. 71, who seeks to prohibit the teaching of religious education in the public schools during the hours when the public schools are regularly in session. The defendant

school district includes all of the schools and school buildings in the city of Champaign. Special motions to quash the summons and dismiss the petition on limited appearance of the defendant were overruled. Answer being filed, and after intervening petitions and reply thereto, the cause by agreement was heard before the three judges of the sixth judicial circuit, sitting *en banc*, for the purpose of determining the disputed questions of fact and law involved in the case.

The record discloses that in the fall of 1940 the Champaign Council of Religious Education, a voluntary association of Jewish, Roman Catholic and Protestant faiths, was formed. They immediately sought and secured from the board of education of Champaign School District No. 71, permission to offer classes in religious education in grades four through nine. Qualified instructors, all materials and books, as well as incidentals, were to be furnished at the expense of the council. Admission to the classes was to be allowed only upon the express written request of parents, and then only to classes designated by the parents. They were to be excused by the board from attendance in the grade schools for thirty minutes and from the junior high school for a period of forty-five minutes in each week for participation in the religious education classes. Classes were to be scheduled so as not to interfere with the regular public-school classes after consultation with the public-school teacher. Each faith—Catholic, Jewish and Protestant, was to have its separate instructional classes and no expense in connection with the classes was to be borne by the board. Additional groups were to be freely permitted to participate upon the same terms. Lesson materials and curriculum were to be selected by a committee representative of all groups participating and in a manner to avoid any offensive, doctrinal, dogmatic or sectarian teaching. It is apparent the teaching was to be of the content of the Bible without interpretation or attempt

at influencing belief in the doctrines or creeds of any church.

James Terry McCollum, the son of the relator, around whom this controversy centers, entered the fourth grade of the district school in the fall of 1943, and along with five others did not. participate in the religious education classes during the first semester. He did, however, participate with his mother's consent during the second semester. In the fall of 1944 he transferred from the South Side School at his mother's request and enrolled in the fifth grade in the Doctor Howard School, and, with one other youngster, Elwin Miller, did not attend the religious education class the first semester. During the second semester he was alone in not participating therein. When other members of his class were attending the religious education classes he continued his regular studies in the music room under the supervision of his regular teacher. On one occasion he was placed at a desk in the hall where apparently he was teased by passing children who thought he was being punished. On complaint of his mother, this practice was promptly and permanently discontinued, as was that of placing him in the music room, when his mother claimed he was a victim of claustrophobia.

The record further discloses that the teachers conducting the religious classes were not teachers in the public schools but were subject to the approval and supervision of the superintendent. The courses in religious education were conducted in the regular teaching rooms in the public-school building, which were temporarily turned over to the religious-education teachers, and the classes were held during the school hours. They covered a period of thirty minutes of each week in the 4th, 5th, and 6th grades and fifty minutes each week in the 7th, 8th, and 9th grades of the junior high school. Cards were distributed to the parents of elementary students by the public-school teachers requesting them to indicate whether they desired their

children to receive religious education. After being filled out, the cards were returned to the teachers of religious education classes either by the public-school teachers or the children. Separate rooms for Catholics, Jews and Protestants were provided for religious instruction away from those who did not desire to participate.

At the opening of the trial, an intervening petition was filed by Elmer C. Bash and his wife, citizens and taxpayers residing in the school district, alleging that they are the parents of two minor children who attend the district school; that they are members of the University Place Christian Church, located in the community, and that they desire the classes in religious education, complained of by the relator, to continue; and allege that under the first and fourteenth amendments to the constitution of the United States, and under the constitution of the State of Illinois, they have the right to direct the education of their children, and prayed for the dismissal of the relator's petition. No objection was made to the filing of this petition, but the relator filed a reply thereto praying strict proof, and denying that intervenors' children are entitled to attend the classes of religious education and that they have any constitutional rights as alleged in the intervening petition. This petition was not referred to in the trial court because the court was of the opinion that the case could be disposed of on the complaint for *mandamus,* the answer thereto and the evidence heard in regard to the same.

The errors relied upon by the relator for reversal are: (1) The segregation of public-school pupils into sectarian groups for the purpose of instruction in a public school is violative of Federal and State constitutional guaranties of freedom of religion,—the fourteenth amendment to the Federal constitution and section 3 of article II and section 3 of article VIII of the constitution of Illinois. (2) The use of public funds for sectarian education violates section 3 of article II and section 3 of article VIII of

the constitution of Illinois, and section 15-14 of the School Code of Illinois. (3) Sectarian teaching of public-school students in public-school buildings during school hours is violative of section 6-43 of the School Code of Illinois. (4) The discretion of an administrative body and officer in this case is violative of section 2 of article II and article III of the constitution of Illinois, and is a violation of the guaranties of due process of law and equal protection of laws by the fourteenth amendment to the constitution of the United States.

It was defendant's contention that the judgment of the trial court should be affirmed because: (1) The authority of the board of education to release pupils from public-school studies for a period each week in order that they may take religious studies is established by the recent case of *People ex rel. Latimer* v. *Board of Education,* 394 Ill. 228, 68 N.E. 2d 305. (2) The defendant has the statutory power, subject to the constitutional provisions here involved, to permit the use of schoolrooms for religious education when they are not actually being used for public-school purposes, even though other portions of the building are then being used for public-school classes. (3) No constitutional provision is violated by the facts shown in this record because the plan is voluntary and no one's religious freedom is infringed, and because there is no appropriation, donation or payment of public money in aid of a sectarian purpose. The use of the school building is a mere incidental aid to religion which this court long ago approved. *Nichols* v. *School Directors,* 93 Ill. 61.

It is first contended by relator, on her assignment of errors, that the segregation of public-school pupils into sectarian groups for the purpose of instruction in a public school is violative of Federal and State constitutional guaranties of freedom of religion as provided in the fourteenth amendment to the Federal constitution, and section 3 of article II and section 3 of article VIII of the

constitution of Illinois. It is particularly urged that the plan of the school district of providing religious instruction for three groups,—Catholic, Jewish and Protestant,— through distribution of cards or schedules for voluntary registration, with provision of public schoolroom and of school-time periods for such instruction, is obnoxious to the constitutional guaranties; that while the program is voluntary it results in segregation and embarrassment to those not participating, which amounts to interference with their religious freedom.

Relator places great reliance upon the case of *People ex rel. Ring* v. *Board of Education,* 245 Ill. 334, and quotes from page 351: "The exclusion of a pupil from this part of the school exercises in which the rest of the school joins, separates him from his fellows, puts him in a class by himself, deprives him of his equality with the other pupils, subjects him to a religious stigma and places him at a disadvantage in the school, which the law never contemplated."

We do not think it necessary, in the consideration of this case, to make an extended analysis of the particular situation as it existed in the *Ring case,* which is plainly dissimilar from the facts as they exist in this case. What was said there in the majority, as well as in the dissenting opinion, presents a lengthy discourse as to religion, its origin, various forms of worship, the versions of the scripture, and setting forth the historical and literary features of the Bible from the early Hebrew to the present generation. It is there for perusal as the divergent views of the court. Briefly, the facts there reveal three public schools were maintained in District No. 24, Scott county, in accordance with the statute of Illinois. The school opened in the morning with religious exercises which consisted of scripture reading from the King James version of the Bible, repeating of the King James version of the Lord's

prayer while standing with bowed heads, and the singing of Protestant hymns. These exercises were conducted by the teacher in opening school and the participation was compulsory. A number of children attending the school were of the Roman Catholic faith and the parents, who were Roman Catholics, contended that the compulsory participation of the pupils deprived them of the freedom of worship guaranteed by the constitution. It can readily be seen that the exercises as conducted there were part of the public-school program carried on while the children·participating were in attendance in the public-school classes. The exercises complained of were actually worship services, including the Lord's prayer, the singing of hymns, and the participation in the exercises was compulsory.

In the instant case, the religious education classes are voluntary and are not a part of the public-school program, and pupils are excused from their public-school classes while attending the classes in religious education. The religious education courses do not go to the extent of being worship services and do not include prayers or the singing of hymns. It might be further added that the classes are conducted by teachers employed by the church organization and all expenses in connection therewith are born by such organization. The dissimilarity is easily distinguished.

Many cases from foreign jurisdictions are cited but, in the main, they are dissimilar, and do not concern a voluntary system and are lacking in equality of denominations. The case of *Harfst* v. *Hoegen*, 349 Mo. 808, 163 S.W. 2d 609, 141 A.L.R. 1136, is cited and it is urged it supports the *Ring case*. While it is true some support is suggested with respect to a Catholic service, and the possibilities of a non-Catholic being excused, the case is circumscribed by the Missouri constitution. It was held there, under entirely different facts, that a parochial school could not be maintained at public expense or that teachers of religion could

not be paid from public-school funds. To point out the dissimilarity of the many cases cited would unnecessarily extend this opinion.

We recently held, in the case of *People ex rel. Latimer* v. *Board of Education*, 394 Ill. 228, that a voluntary program of religious education which permitted the superintendent of schools to excuse public-school children at the request of their parents for one hour each week for the purpose of attending religious education classes at places outside of the school activities or property, did not violate the American principle of separating church and State, and did not violate the first amendment to the constitution of the United States which provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof;" and did not violate the fourteenth amendment to the same constitution providing that no State shall make or enforce any law which deprives any person of life, liberty or property, without due process of law, or which denies to any person within its jurisdiction the equal protection of the laws. This court there further denied that such action violated a similar section of the Illinois constitution, being section 2 of article II; and further denied there was a violation of sections 1 and 3 of article VIII of the same constitution, which require the General Assembly to provide a thorough and efficient system of free schools and that no public corporation shall make any appropriation, or pay from any public fund whatever, anything in aid of any church or sectarian purpose; and denied the contention of petitioners in reliance upon section 3 of article II, reading as follows: "The free exercise and enjoyment of religious profession and worship, without discrimination, shall forever be guaranteed; and no person shall be denied any civil or political right, privilege or capacity, on account of his religious opinions. * * * No person shall be required to attend or support any ministry or place of wor-

ship aganst his consent, nor shall any preference be given by law to any religious denomination or mode of worship."

It is apparent the program as adopted in the *Latimer case* was to all intents and purposes exactly the same as that involved in the instant case, excepting only that the classes were held outside of the schoolrooms. As to the classes being held in the schoolrooms, they were not held in the presence of anyone who did not desire to participate therein, and those remaining were assigned to other rooms and continued with their class studies.

It is contended by appellant in the instant case that, in arranging the classes for religious instruction consisting of Protestants, Catholics and Jews, the readjustment of these groups from room to room is necessarily known to the members and those of each group must know who are members of each other group. The *Ring case* is cited in support of the proposition that the exclusion of a pupil from this part of the school exercises puts him in a class by himself and subjects him to a stigma. We hardly see the difference in this respect as to the situation in the *Latimer case,* above referred to, where groups were excused for one hour each week during the regular school period for the purpose of attending religious education classes at places outside of the school property and thereafter returned to the public-school room. The same might be said there that those remaining were subjected to a stigma. That appellant's son was so subjected is refuted by appellant's own testimony wherein she testified, "As for religious education in the public schools, it would not have a bad effect upon Terry [meaning her son.] I do not know it would bother him one way or the other. I did not know it until in court."

It is next contended the use of public funds for sectarian education violates section 3 of article II and section 3 of article VIII of the constitution, and section 15-14 of the School Code of Illinois. It is pointed out that the

question is one as to whether any public funds were expended, or any grant or donation of land, money or other personal property made (1) in the additional use of school buildings for independent religious instruction "while they are being used by students;" (2) in the additional services of public-school teachers and the frequent movement of students from room to room; or (3) in printing or other expenses involved in the additional function of religious instruction. As to this, we find the classes were held in the schoolrooms during the current school period and the rooms were in use during the entire period, and, no doubt, the same cost for lights, heat, janitor service, etc., would exist whether or not the schoolroom was used at the particular time by this particular class. Any additional wear and tear on the floors would seem to be inconsequential. The trial court unanimously found as facts that there was no direct appropriation of any kind or direct expenditures of money of any kind for or on behalf of said religious education classes. Any additional wear and tear of furniture due to the religious education classes, so far as the evidence in this case discloses, would be negligible. This, of course, resolved the question of fact against appellant.

The appellant urges this is a question of law as to whether public funds have been used to such an extent as to violate section 3 of article II and section 3 of article VIII of the constitution of Illinois. In the case of *Nichols v. School Directors,* 93 Ill. 61, this court held that permission to hold stated meetings for religious purposes in the schoolhouse did not compel a taxpayer to aid in supporting a house of worship in violation of the above constitutional restraints. As the court there aptly said, "It seems to us a very strained interpretation to attempt to bring the present case within the reach of either one of the above constitutional provisions." The court there further said, "Religion and religious worship are not so placed under the ban of the constitution that they may not be

allowed to become the recipient of any incidental benefit whatsoever from the public bodies or authorities of the State." This decision has been cited and followed by this court in a number of cases. It is our judgment the incidental expenses that might occur here are not in violation of the constitutional restraints insisted upon. *De minimis non curat lex.*

It is next contended that sectarian teaching of public-school students in public-school buildings durings school hours is violative of section 6-43 of the School Code. (Ill. Rev. Stat. 1945, chap. 122, par. 6-43.) Under this section the following power is conferred upon school directors: "To have the control and supervision of all public schoolhouses in their district, and to grant the temporary use of them, when not occupied by schools, for religious meetings and Sunday schools, for evening schools and literary societies, and for such other meetings as the directors deem proper; to grant the use of assembly halls and class rooms when not otherwise needed, including light, heat and attendants, for public lectures, concerts, and other educational and social interests, under such provisions and control as they may see fit to impose and to conduct, or provide for the conducting of recreational, social and civic activities in the school buildings." That part of the statute beginning with the words "to grant the use" and concluding with the word "buildings," was added by the amendment of 1915, and appellant cites the case of *Lagow* v. *Hill,* 238 Ill. 428, which case was decided in 1909, before that amendment. In the *Lagow case* a taxpayer of the school district filed a bill in equity to restrain the board of school directors 'from permitting certain fraternal organizations to hold meetings in one room of the school building in said district. The evidence there disclosed that the schoolhouse, a two-story brick building, consisted of two rooms downstairs, and a large assembly room and a small room designed as an office for the super-

intendent on the upper floor. No part of the second floor at the time this suit was filed was being used for school purposes, the rooms on the first floor affording ample accommodation for the classes. It was contended by the taxpayer that the board of directors had exceeded their statutory powers in permitting the temporary use of the second floor by certain fraternal organizations. The evidence discloses that the school directors, for a consideration, permitted the Modern Woodmen and other fraternal organizations to hold meetings in the upper room. A number of teachers testified that the holding of these meetings in no way disturbed or interrupted the school. This court there held the statute clearly gave the board of directors the power in their discretion to grant the use of the school building or such part thereof as was not occupied by the school, for any meeting which the board deemed proper. This holding was based on the evidence of the teachers who testified that holding these meetings in no way disturbed or interrupted the schools.

We find, in the instant case, a teacher in the schools for sixteen years was called as a witness for appellant. She testified: "In the bulletin we are advised that the religious education teacher will appear in the building prior to 8:30, the official school time; that is when the first bell rings, to confer with the principal and teachers as to the time they find it will fit best into their program, so that it will in no way interfere with the regular secular subjects." She further testified: "Our program is flexible. We do not teach a subject according to the minutes of the day and hour. We are teaching subject matter, not time. A class or a subject is never omitted even though thirty minutes out of the fifty-minute arithmetic class might be taken on Monday morning. There is fifty minutes of time in the week about which there is no provision for use in the public-school course. If thirty minutes is used for religious education there is still twenty minutes

of unassigned time." From this, we are able to discern that these classes as arranged caused but very little, if any, disturbance and no interruption as to classes. This was the import of the holding in the *Lagow case* as cited by appellant. Under such circumstances as detailed here in the conduct of the schools and the method of holding the classes, the contention that the board of education exceeded its statutory powers is not tenable. Questions of policy are solely for the determination of the board, and when they have once been determined by it the courts will not inquire into their propriety. (*People ex rel. Fursman* v. *City of Chicago,* 278 Ill. 318.) Courts will not interfere with the judgment of the board unless by an arbitrary and discriminatory action it abuses the power granted. *Segar* v. *Board of Education,* 317 Ill. 418.

It is admitted by appellant that a school board has a wide discretion in the exercise of its powers; (*Board of School Inspectors* v. *People ex rel. Grove,* 20 Ill. 526; *Wilson* v. *Board of Education,* 233 Ill. 464; *People ex rel. Fursman* v. *City of Chicago,* 278 Ill. 318, *Segar* v. *Board of Education,* 317 Ill. 418;) but it is contended the discretion which may be exercised is that within powers conferred by the statute; that the board of education cannot exercise any power except in the manner provided by statute. *Carter Oil Co.* v. *Liggett,* 371 Ill. 482.

It is, of course, true the board of education cannot exercise any power except in the manner provided in the statute, but that always presents the difficult question as to whether or not, under the existing facts, it has improperly exercised a power not in any manner provided by such statute. Apparently, the board here had worked out a plan for religious education classes and by the plan it was not necessary for the schoolroom to be occupied for any other purpose at that particular time. Further, these classes were so arranged as not to conflict with others. This arrangement, coupled with the rule that courts will

not interfere with the judgment of the board unless it has abused the powers granted, would not seem to be a violation of the power which the board was permitted to exercise.

It is urged by appellant that as the power is vested in school boards by the Illinois statutes, (Ill. Rev. Stat. 1945, chap. 122, par. 6-43,) to grant the temporary use of schoolhouses when not occupied by schools, for religious meetings and Sunday schools, no authority is granted to choose sects or denominations, and, in the absence of such authority, there would be an equal duty to all applicants; that the existence of a discretion, either by grant or implication, would invalidate the statute as violative of section 2 of article II and article III of the constitution of Illinois, and as violative of the fourteenth amendment to the constitution of the United States. It is true that if the power is clearly legislative in nature and exclusively belongs to the legislative department of the government, its delegation by the legislature would be unconstitutional; but in sustaining grants of power the courts have been guided considerably by considerations of expediency. They have recognized that a certain degree of deliberation is essential to the efficient and effective operation of the government, and that in some situations the legislature must leave to the executive officers and administrative boards the duty of carrying out the mandate of the statute. As heretofore pointed out, school boards have a wide discretion in the exercise of powers conferred upon them, and the courts will not interfere with the judgment of the board unless by an arbitrary and discretionary action the powers granted are abused. As to the particular point that no authority is granted to choose sects, there was no choice here on the part of the board.

Aside from the fact that the question of discretion amounting to delegation of legislative power was not raised in any manner in the trial court, it does not appear from this record, including the testimony as referred to in appel-

lant's brief, that there was any arbitrary and discretionary action by the board of the particular powers granted. Appellant's contention in this respect cannot be maintained.

We have the record here, which, relieved of its excess verbiage, technicalities and niceties, presents the simple question, does either the Federal or State constitution, or both, in their guaranty of religious freedom, prohibit voluntary religious classes in the public schools under the plan as disclosed by this record? Certainly, such classes do not violate the freedom of conscience of any individual or group so long as the classes are conducted upon a purely voluntary basis. Freedom of religion as intended by those who wrote the State and Federal constitutions means the right of an individual to entertain any desired religious belief without interference from the State. Our government very wisely refuses to recognize a specific religion, but this cannot mean that the government does not recognize or subscribe to religious ideals. We find such recognition in the very preamble of our State constitution. The government does not recognize a particular faith but this does not mean that it is indifferent to religious faith. To deny the existence of religious motivation is to deny the inspiration and authority of the constitution itself.

We do not find, from this voluminous record, anything that would warrant us in finding that there has been any violation of State and Federal guaranties, or, under the system as outlined, a violation of section 6-43 of the School Code of Illinois.

For the reasons heretofore announced, the judgment of the circuit court is affirmed.

*Judgment affirmed.*